IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD WUEST,

    Plaintiff,

v.

COMCAST CORPORATION, ET AL.,

    Defendants.

No. C 17-04063 JSW

**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

    Now before the Court is the motion filed by Defendants Comcast Cable Communications Management, LLC and Comcast Cable Communications, LLC ("Defendants") to compel individual arbitration and to stay litigation. The Court finds the motion suitable for disposition without oral argument and therefore VACATES the hearing set for October 13, 2017. *See* N.D. Civ. L.R. 7-1(b). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby DENIES the motion to compel arbitration and to stay litigation.

## BACKGROUND

    Plaintiff Richard Wuest is a former Comcast subscriber who had once ordered services for his home is Rancho Cordova, California. (Dkt. No. 1, Complaint ¶ 13.) Plaintiff terminated his customer relationship with Comcast on or before July 7, 2016. (*Id.*) Approximately nine months after cancellation of his Comcast services, Plaintiff received a postcard in the mail advertising Comcast's new Xfinity television, internet, and home security services. (*Id.*) The backside of the postcard indicated that the new services were specifically "[l]imited to new residential customers." (Dkt. No. 19-1, Declaration of Richard Wuest ("Wuest Decl."), ¶ 3, Ex. 1.) On April 23, 2017,

Plaintiff called the toll-free number printed on the postcard to inquire about the offer for new Xfinity services. (*Id.* at ¶ 4.)

On June 12, 2017, Plaintiff brought this putative class action against Defendants alleging one cause of action under California Penal Code Section 632.7, which prohibits the recording of telephone conversations without all of the parties' consent. Plaintiff alleges that Defendants recorded his April 23, 2017 call without notifying him in advance of the recording or obtaining his consent. (Complaint ¶ 18.)

The parties do not dispute that Plaintiff was a Comcast customer until July 7, 2016, when he cancelled his services. The parties also do not dispute that, as a Comcast customer, Plaintiff signed, did not opt out of, and was therefore subject to the standard Residential Subscriber Agreement that included an arbitration provision. By this motion, Defendants move to compel individual arbitration by seeking to invoke the arbitration provision in the subscriber agreement, arguing that Plaintiff's claim touches upon the prior subscriber relationship.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration agreement. 9 U.S.C. § 1. Under the FAA, the party seeking to invoke an arbitration agreement may petition the district court "which, save for such agreement, would have jurisdiction [to hear the case], for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted). The FAA is "an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. American Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which is has not agree so to submit. *Vera v. Saks & Co.,* 335 F.3d 109, 116 (2d Cir. 2003) (citations omitted). Accordingly, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so*." *Cap Gemini Ernst & Young U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (quotations omitted).

A district court adjudicating a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g., Mitsubishi Motors*, 473 U.S. at 627-28. The FAA dictates that arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Here, the Court finds that the arbitration clause is valid, and the only issue remaining is whether it pertains to the specific claims raised in this lawsuit. When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (finding that the language

3

1 "arising in connection with" in an arbitration clause reaches "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.")  The FAA mandates that "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2103) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The arbitration provision in the parties' former subscription agreement sets out the definition of "dispute" to mean:

> any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision.

(Dkt. No. 13-1, Declaration of Claudia Salcedo ("Salcedo Decl."), Ex. 1 at ¶ 13(b).)  There is no contention between the parties that Plaintiff had agreed to arbitrate his disputes with Comcast should they have arisen regarding any aspect of his relationship with Comcast and that Plaintiff did not opt out of the arbitration provision while a customer of Comcast.  Further, there is no dispute that the arbitration provision specifically survives the termination of the services with Comcast.  (*Id.*, Ex. 1 at ¶ 13(k).).  However, there is also no dispute that Plaintiff was not a customer of Comcast at the time he received the postcard advertising new services or at the time he called the toll-free number to inquire about the services.

Comcast contends that Plaintiff received the postcard as a result of being a former subscriber "to encourage them to repurchase Comcast services."  (*Id.* at ¶ 10.)  However, it is clear from the postcard itself that it was addressed to Plaintiff "or current resident" and specifically provided that the offer was restricted to new residential customers only. (Wuest Decl., ¶ 3, Ex. 1.)  The current claims are focused entirely on Plaintiff's call to Comcast as a result of the generic advertisement soliciting new customers for new services unrelated to his past relationship as a former customer with different services.  While the language in the arbitration provision is broad to encompass any dispute regarding any aspect of the customer's relationship with Comcast, it is clear from the pleadings here that the dispute arises not from the prior customer relationship, but rather from a completely separate incident unrelated to the parties' prior relationship.

4

This Court agrees with the finding in *Savage v. Citibank N.A.*, 2015 WL 2214229, at *4 (N.D. Cal. May 12, 2015), that the arbitration clause must extend only to claims that "arise out or relate to" the contract the Plaintiff signed. *See also In re Jiffy Lube International, Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253, 162-63 (S.D. Cal. 2012) (holding that even in a cases where the language of the arbitration provision is broad, the arbitration clause cannot cover any and all disputes between the parties, even those arising from a completely separate incident). The Court is persuaded by the reasoning that if there is no limiting clause in the arbitration provision "'absurd results [would] ensue,' such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated." *In re Jiffy Lube*, 847 F. Supp. 2d at 1263 (citing *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003)). The Court finds that scope of the current lawsuit is clearly limited to the telephone call Plaintiff placed to Comcast regarding new services nearly nine months after he had terminated his earlier customer relationship. The Court is not persuaded that the claim here arises out of or is in any way related to the prior relationship with Comcast and extension of the scope of the earlier customer agreement arbitration provision would similarly yield absurd results.[1]

///

---

[1] Defendants also contend that the parties' original customer agreement contains an explicit delegation of disputes over the "validity, enforceability or scope" of the arbitration provision to the arbitrator. (*See* Salcedo Decl., Ex. 1 at ¶ 13(b).) The Court finds the language of the delegation clause unambiguous. *See Grear v. Comcast Corp.*, 2015 WL 926576, at *2 (N.D. Cal. March 3, 2015). However, in conjunction with the severability clause, the determination of the scope of arbitrability rests with the Court.

The severability clause at Section 13(i) states: "In the event this entire Arbitration Provision is determined to be illegal or unenforceable for any reason, or if a claim brought in a Dispute that is found *by a court* to be excluded from the scope of this Arbitration Provision, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury." (*Id.* at ¶ 13(i) (emphasis added).) This provision appears to permit the Court to find a dispute to be excluded form the scope of the arbitration provision and creates an ambiguity regarding the delegation of authority.

Where there is an ambiguity in the delegation of authority in the full contract to determine the scope of the arbitrability provision, the Court may not infer clear and unmistakable delegation of authority to the arbitrator. *See Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 940-41 (N.D. Cal. 2015) (citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012) ("As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provision in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator."); *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1445 (2012) ("the Agreement's statement in the severability provision that a *court* may decide the question of enforceability creates an ambiguity as to whether an arbitrator should decide if an arbitration contract is enforceable.")).

5

Accordingly, the Court DENIES Defendant's motion to compel arbitration and to stay litigation. The parties shall appear at the initial case management conference on November 3, 2017 at 11:00 a.m. and shall submit their joint case management statement by no later than October 27, 2017.

**IT IS SO ORDERED.**

Dated: October 5, 2017

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

6